Pearson, C. J.
 

 His Honor was of opinion that the allowance of alimony
 
 pendente lite
 
 was a matter confided to his discretion. In this he was mistaken. Whether .the matter set forth is sufficient to entitle the petitioner to a decree for alimony, assuming it to be true, is a question of law; and the discretion confided to the court below is in regard to-what is a reasonable amount tor the support and sustenance of the petitioner and her family. The provision of the act, Rev. Code, c. 39, s. 15, that upon an appeal “ this court shall re-examine only the sufficiency of the petition to entitle the petitioner to relief,” treats it as a question of law, and excludes the other from re-examination, treating
 
 it
 
 as a matter of discretion merely.
 

 To this error we ascribe the doubt of his .Honor as to whether an appeal could be granted from an order refusing to allow alimony. His attention was not called to the case of
 
 Taylor
 
 v.
 
 Taylor,
 
 1 Jon. 528, where it is expressly decided that the petitioner may appeal under the provision of the statutes upon the subject of “appeals.” It is true that decision was made upon the act of 1852, c. 53; but it is apaprent that the act before us is in this respect the same.
 

 It was contended on the argument that, supposing his Honor had a right to allow the petitioner to appeal, he had no power to do so without requiring security; and much stress was laid on the fact that the 16th sec. of the Rev. Code, c. 39, in giving an appeal from th
 
 & final
 
 judgment, has an express provision that the court may grant the appeal
 
 *219
 
 without security, whereas the 15th sectiqn has no such provision.
 

 The explanation is, that in reference to appeals from interlocutory judgments and decrees, such a provision had been already made by c. 4, s. 23, which allows appeals “upon such terms as shall appear to the court just and equitable.”
 

 It was then insisted that it appears by the petition that the question of marriage or no marriage is the main issue between the parties, and that alimony cannot be allowed until that matter is disposed of: for this Shelford on Divorce, 33 Law Lib. par. (587,) 347, was cited; such no doubt is the rule in England, but as is said,
 
 Wilson
 
 v.
 
 Wilson,
 
 2 Dev. & Bat. 377, “The jurisdiction of'the Superior Courts being given by statute, the power of the court must be collected either from express enactments or from the general scope of these statutes, and no power can be derived by inference or from any analogy furnished by a coincidence of the provisions of the statutes with the practice of the Ecclesiastical Courts in England.” Our statute is general — includes all petitions for divorce and alimony — -makes no provision for disposing of the question of marriage or no marriage as a preliminary one — and puts the right to be allowed alimony
 
 2xndente lite
 
 upon the sufficiency of the matter set forth in the petition; proceeding upon the idea that it is better when a woman makes oath under the penalty affixed to perjury to the fact of marriage, to take it to be true tor the purpose of allowing alimony
 
 pendente lite,
 
 even although it may turn out to be false and the man may have but little chance to get back what he ought not to have been compelled to pay, rather than subject a wife to the danger of starvation, if a brutal husband makes oath denying the fact of marriage, which may turn out to be false.
 

 But the question is not presented by this case. The petition makes a distinct allegation of the marriage, and puts
 
 *220
 
 the
 
 gravamen
 
 on the allegation that the defendant has repudiated the petitioner, and is not only living in adultery with another woman but has gone so far as to marry her, and live openly with her as his wife in the city of Wilmington, and that, (with a view of putting away the petitioner and getting rid of her as his wife, after living with her in New York, Baltimore and Wilmington openly as such, and recognizing her and their infant child in the relation of husband and father for several years,) he acted towards her in a brutal and harsh manner, and actually committed upon her a dangerous assault with' a knife, so that she had to seek protection of her person and life by taking out a peace-warrant against him, until she was driven to desperation, and was forced to agree to accept of an allowance of $10' a month and take their child and go back to the city of New York, sometime after which he married Miss Catherine Joiner, and is openly living with her as his wife!
 

 For the purpose of this motion for alimony
 
 pendente lite,
 
 we are confined to the allegations of the petition, and we are to take them as true; so there is no issue as to the fact of marriage or no marriage, and “ the matter set forth is not only sufficient to entitle the petitioner to a decree for alimony,” but the case discovers a degree of hardened villainy seldom met with in the annals of crime.
 

 When the defendant has an opportunity of being heard, we presume he will deny the fact of marriage; and the trial will decide either that the petitioner has committed perjury in regard to matters about which it will be easy to convict her, or else that she is an injured and persecuted woman.
 

 It was further insisted that the delay for seven years after the defendant married Catherine Joiner and lived with her openly as his wife, is a bar to this application, in the absence of any allegations to account for it; and
 
 Whittington
 
 v.
 
 Whittington,
 
 2 Dev. & Bat. 68, is relied on. In that case it is held that a delay for any length of time after the six months re
 
 *221
 
 quired by the statute, ought to be accounted for, and suit, especially on the part of the husband, although no time is fixed as a precise bar, should be brought within so short a time as to show that he is acting on the wrong itself, and not merely because he desires a divorce for some ulterior purpose; and that long delay unaccounted for is evidence of
 
 connivance,
 
 and shows that the complaint is not made “ in sincerity and truth for the causes set forth in the petition.”
 

 The draftsman of this petition seems not to have been aware of the necessity of accounting for the delay, so as to rebut the presumption of connivance; but we think the petition, although in a very disconnected and inartificial manner, discloses facts which are so far sufficient to account for the delay as to rebut the presumption of connivance. After the petitioner went back to New York, she cordd not claim this State as the place of her residence, and, in order to maintain a petition for a divorce, it was necessary for her to comeback and live here three years:
 
 Schonwald
 
 v.
 
 Schonwald,
 
 2 Jon. Eq. 367.
 

 This petition is filed in 1857, and sets out that the defendant commenced living in adultery with Catherine Joiner seven years before that date; so her residence in New York accounts for three years of the time, and the statute required a delay of six months, which makes half of the time, supposing that she came on here to live soon after she heard of her husband’s second marriage; but besides she sues
 
 in forma pauperis,
 
 and swears that she has no means of support for herself and child, and the court is obliged to take notice of the fact that it is very difficult for one so poor to institute and carry on a proceeding of this kind without great delay. "Witness this case ! commenced in 18'57; the order setting it for hearing set aside in 1867; and the interlocutory decree refusing to allow alimony, sent to this court by leave of the judge to appeal without security, and then note the difference between a husband and a wife! What motive had
 
 *222
 
 she to connive at her husband’s unfaithfulness ? The delay-must have been on account of her inability to sue.
 

 There is error; decretal order reversed; and ordered that the petitioner bé allowed alimony
 
 pendente lite
 
 of such reasonable amount as may in the discretion of the court below seem just, under all the circumstances of the case.
 

 This will be certified.
 

 Per Curiam.
 

 Order accordingly.